ENGLAND, Justice
(dissenting).
I respectfully dissent. Under the doctrine announced in Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441 (Fla.1961), there is a real and embarrassing direct conflict between the decision below and our decision in Spinney v. Winter Park Bldg. & Loan Ass’n, 120 Fla. 453, 162 So. 899 (1935). As a result, we have jurisdiction for review under Article V, Section 3(b)(3) of the Florida Constitution.
The point of law in this case is whether a federal savings and loan association is exempt from Florida’s usury statutes. In Spinney we held that a statutory exemption applies to domestic associations, but we did not discuss the status of foreign (including federal) associations. Nonetheless, the district court below attributed to that decision a determination that the exemption is not available to non-domestic associations.[1] Building on the lack of exemption ascribed to Spinney, and brushing aside a tax exemption statute as inapplicable to usury law questions, the district court “therefore” concluded that Financial Federal was not exempt from the usury laws. If the district court did not rely on Spinney as a controlling precedent (as the majority suggests), I fail to discern from its opinion any rational basis on which it resolved the usury exemption issue against Financial Federal.
In my opinion, the district court erroneously attributed a legal conclusion to Spinney which was not at issue there or discussed in the opinion, and then the district court relied on that principle of law as controlling for the precise issue before it. Under these circumstances, I believe that Pinkerton-Hays Lumber demands that we exercise our jurisdiction to set matters straight.
As I would reach the merits of this case, I take this occasion to express my views on them. The essential facts concerning financial arrangements between Burleigh House and Financial Federal, as set out in the district court’s opinion, are not important to the legal issue. The question we have for determination is whether non-domestic associations were exempt from Florida’s usu *1148 ry statute in early 1969.[2] The specific statutes which command our attention are Sections 665.01, 665.161, and 665.18, Florida Statutes (1967).
Section 665.01 defines the term “building and loan association” to include both domestic and foreign savings and loan associations. Sections 665.161 and 665.18 appear to create exemptions from the usury laws for all such associations, the former broadly and the latter more restrictively for nonpayment penalties provided for in an association’s by-laws. We are asked to determine whether the exemptions are as broad as they appear to be, and why the Legislature created two exemptions in the same regulatory code.
Burleigh House essentially argues from the evolution of the statutory exemptions that the first exemption applies only to foreign associations, and as to those it is available only for associations which limit their loans to members. Since federal associations are not so restricted,[3] Burleigh House says that the usury laws apply. This argument traces the Legislature’s original intention of exempting only thrift institutions whose internal structures served as a, check on the interest rates which could be charged to members, and shows that this intent has not been altered by subsequent statutory amendments.
Financial Federal contends that the resolution of this dispute can be ascertained from the plain language of the statutes involved, which purport to exempt all savings and loan associations, and from the logic of the proposition that the complicated provisions of Chapter 665 were not enacted to regulate the few existing financial institutions which in recent times have operated on the pure building society plan as it was known at the turn of the century. Since we are most apt to ascertain a correct understanding of the 1967 statutes by a reconciliation of logic, language and history, I would begin my analysis with the pertinent legislative history.
From 1893 to 1963, foreign “building and loan associations” were governed by a statutory scheme separate from that which regulated domestic associations. Domestic associations were then exempt from usury laws under a provision in the usury statute available to loans made in compliance with all provisions of the domestic code.[4] Foreign associations were then exempt under a provision in the foreign association regulatory code.[5] The term “building and loan association” as applied to foreign institutions, however, was limited to those doing “business on the building society plan, viz., loaning its funds to its members only.”[6] The general usury exemption for domestic associations was repealed in 1909,[7] but reappeared in 1915 as a provision of the domestic association code.[8] This was the pro *1149 vision which was considered in Spinney, and which in 1967 appeared as Section 665.18.
In 1963 the chapter regulating foreign associations was repealed, except for two provisions which were merged into the domestic association code, Chapter 665.[9] One of these was the usury exemption, which was transferred to Chapter 665 and renumbered as Section 665.161. The definition of foreign associations which had limited their loans to members, former Section 668.05, was not one of the two transferred.
It seems to me apparent that in 1963 the Legislature intended to eliminate an outdated system of dual regulation and endeavored to erect a single, integrated regulatory structure for both domestic and foreign thrift institutions. This would lead me to conclude that the reference to “any” association in the code’s general usury exemption, Section 665.161, means precisely that, despite its origin as a limited exemption for foreign associations loaning funds to their members.
The question Burleigh House poses is why anyone should ascribe a different meaning to this exemption as of 1963 than the same language had before that time, considering that the domestic exemption was retained in its same form as well. My answer is that there is no purpose to be served by ascribing to the present regulatory scheme a set of historical connotations which, while once significant, have virtually disappeared,[10] and that an explanation for the dual exemptions is readily apparent. Given the variant history of the foreign and domestic usury exemptions, the Legislature may well have concluded that a repeal of the foreign exemption (Section 668.09) would be viewed as an elimination of the foreign association exemption instead of a matter of regulatory simplification. The Legislature may also have viewed the limited exemption in Section 665.18 for by-law penalties as too restrictive for modern domestic savings institutions.
I conclude, therefore, that under the 1967 statutes, the usury exemptions contained in Sections 665.161 and 665.18 applied with equal force to domestic and foreign savings and loan institutions. This conclusion is consistent with the obligation of courts to view apparent legislative inconsistencies in a manner which will avoid questions of constitutionality. The district court’s decision that domestic associations were exempt from the usury laws while foreign institutions with virtually identical powers were not, raises a serious question of whether the statutes creating the distinction are constitutional under the supremacy clause of the Federal constitution.[11]
For these reasons, I would reverse the decision of the district court.
OVERTON, C. J., and SUNDBERG, J., concur.

. The district court states that “the Florida Supreme Court flatly held that the usury exemption provided for by Fla.Stat. § 665.161 applies only to domestic associations and not to foreign associations . . . .” 305 So.2d at 62.

. Chapter 69-39, Laws of Florida, substantially revised the statutes involved in this proceeding. Under Section 665.53, Fla.Stat. (1969), none of the changes were given retroactive effect. The district court held, and both parties now concede for purposes of review, that this controversy is governed by prior law rather than any statutes which became effective on June 2, 1969.

. 12 U.S.C. § 1464(b)(2), (c) (1969).

. Chapter 4022, § 2, Laws of Florida (1891), providing that “loans made by building and loan and other mutual benefit associations, to its members, when made and conducted under the provisions of Chapter 3709, Laws of Florida, approved May 31, 1887, and acts amendato-ry thereof and such other acts as may hereafter be passed . . shall not be considered usurious. ...” See Section 687.031, Fla. Stat. (1961).

. Chapter 4158, § 8, Laws of Florida (1893), carried forward as Section 668.09, Fla.Stat. (1961).

. Chapter 4158, § 4, Laws of Florida (1893), carried forward as Section 668.05, Fla.Stat. (1961). In Skinner v. Southern Home Bldg. & Loan Ass’n, 46 Fla. 547, 35 So. 67 (1903), we held that foreign associations were subject to the further restriction, which then pertained to domestic associations, that loans be made on the basis of competitive bidding for no more than the value of a member’s share.

. Chapter 5960, § 2, Laws of Florida (1909).

. Chapter 6971, § 8, Laws of Florida (1915). This exemption was retained during the general revisions of the domestic building and loan association code in 1925 and 1927. '

. Chapter 63-318, Laws of Florida.

. I note that federal savings and loan associations did not come into existence until 1933.

. See Michigan National Bank v. Michigan, 365 U.S. 467, 81 S.Ct. 659, 5 L.Ed.2d 710 (1961); United States v. Massachusetts Tax Comm’n, 481 F.2d 963 (1st Cir. 1973).